## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2019, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Abdul Yamobi,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 29, 2019

Court of Appeals Case No.
18A-CR-2869

Appeal from the Marion Superior Court

The Honorable Marshelle Dawkins Broadwell, Magistrate

Trial Court Cause No.
49G17-1809-CM-33233

**Brown, Judge.**

[1] Abdul Yamobi appeals his conviction for invasion of privacy as a class A misdemeanor. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On November 1, 2017, the Boone Superior Court issued a no contact order under Ind. Code § 35-33-8-3.2 in cause number 06D01-1711-F6-2155 ("Cause No. 2155") which provided in part that Yamobi was restrained from any contact with L.Y.

[3] On September 28, 2018, Yamobi lived with L.Y. in an apartment in Marion County and they had a verbal altercation. Yamobi screamed, "B----, get the f--- out of my house. Get out. Get out. I want you out." Transcript Volume II at 7. L.Y. eventually called the police. Indianapolis Metropolitan Police Officer Ryan Wright responded to the scene where other officers were already present, placed Yamobi in handcuffs, and confirmed that the active protection order had been served.

[4] On September 29, 2018, the State charged Yamobi with invasion of privacy as a class A misdemeanor. On November 1, 2018, the court held a bench trial. L.Y. testified to the foregoing. The prosecutor introduced the no contact order, defense counsel stated "No objection, Judge," and the court admitted it without objection as State's Exhibit 1. *Id.* at 9. The court asked the prosecutor if she was going to be able to show service, and the prosecutor stated: "It – he signed the back page. The back page is the scan of when he was served it, which is

why it has the file stamp of that January date." *Id.* at 10. The court stated that it could not take the evidence as substantive evidence, and the prosecutor indicated that she understood. Officer Wright testified "I was advised that there was an active protective order. Uh we went upstairs, talked to Mr. Yamobi, I placed him in handcuffs, we brought him downstairs, and then I confirmed that he had the active protective order and it was served." *Id.* at 12.

[5] After the State rested, Yamobi's counsel moved for dismissal under Trial Rule 41(B) and argued that the State had not proven that Yamobi's signature was on State's Exhibit 1 or that he was served with a copy. After some discussion, the court stated:

> So, and I had some concerns about that as well, but then I would note that in the document, there are four (4) pages and the pages are numbered one (1) of three (3), two (2) of three (3), three (3) of three (3), and then again, three (3) of three (3). On the first page three (3) of three (3), there is a date – a signature date of November 1st, 2017, and it shows approved and ordered by Honorable . . . Jeffrey Edens, Judge and it does not show a signature of the Defendant. On the second page three (3) of three (3), there is a signature of the Defendant, and there's a file-stamp of January 12th, 2018, how – which I don't – which I think would be problematic for the State, but for the fact there's also a second certification of this document by the Clerk under the signature that shows that this signature by the Defendant uhm has been certified by the Clerk.

*Id.* at 16-17. The following exchange then occurred:

> [Defense Counsel]: And I think that gets cleared up if the State just files a certified copy of the CCS that shows this was entered

that day.  Again, I'm telling them how to prove their case, but I don't know what this is from.  I mean, there's a certification, but it's a separate document.  Maybe there's a separate protective order in this case, I don't know.  And the State hasn't – it's not my burden to prove that; the State has to prove that this is the document that goes with the first three (3) pages and all they've said to the Court is it was filed on the 12th and it's certified.  I don't know if it goes with these other three (3) pages.

* * * * *

THE COURT:  Well, I know that it was – that it does go with the other three (3) pages because that last – the fourth page, which is also entitled page three (3) of three (3), is certified also uhm by the Clerk – there was the certification stamp directly underneath the Defendant's signature.  So, I do find the State has met its burden.

* * * * *

[Defense Counsel]: I – I guess this – well, I know for a fact that this could not have been the same document because the Judge signed it with no signature and it's certified on November 1st.

THE COURT:  Right.

[Defense Counsel]:  And then it's file-stamped on a different page on January 12th, so it can't be from the same document.

THE COURT:  Well, certainly it can.  Many times when attorneys circulate documents, I see that in divorces all the time, there will be two (2) signature pages that are then combined if the parties are not together to sign, and in this case, I think that the State has cleared any possible problem because of the additional certification under the Defendant's signature.  The – the Clerk in this matter has certified that this is an accurate uh signature of the Defendant.  It was filed on January 12th, 2018 – this document with his signature.  She certified that and if you look at the cover page, it says that it is a no contact order that remains in

place until further order of the Court and there was no expiration date. Okay, so I find that the State has met its burden.

*Id.* at 17-18.

[6] Yamobi testified that he was living by himself on September 28, 2018, that L.Y. appeared at his apartment that day, he told her to leave, and she did not. On cross-examination, he responded affirmatively when asked if he was indicating that he had not seen her or had any contact with her prior to that date and after the protective order. The court found Yamobi guilty as charged and sentenced him to 180 days with 170 days suspended.

### *Discussion*

[7] The issue is whether the evidence is sufficient to sustain Yamobi's conviction. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[8] Yamobi does not dispute that a no contact order was issued on November 1, 2017, nor that his contact with L.Y. on September 28, 2018, was in violation of

the terms of the order. Rather, he argues that the State presented no evidence beyond State's Exhibit 1 to show proof of service. He contends the court incorrectly found the State had met its burden of proving that he knowingly violated the no contact order. He also argues there was no authentication of the signature as belonging to him.

[9] The State maintains that Yamobi's testimony during cross-examination demonstrates that he knew the protective order had been issued prohibiting him from having contact with L.Y. and that his defense was that she came to his home in violation of the order. It points out that Officer Wright confirmed that the protective order was active and had been served. It also asserts that the protective order containing Yamobi's signature was on the return for the order.

[10] Ind. Code § 35-46-1-15.1 provides that "[a] person who knowingly or intentionally violates . . . an order issued under IC 35-33-8-3.2 . . . commits invasion of privacy, a Class A misdemeanor." The charging information alleged that Yamobi "did knowingly violate an order issued under I.C. 35-33-8-3.2 by the Superior Court of Boone County under [Cause No. 2155] to protect [L.Y.]." Appellant's Appendix Volume II at 12. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2.

[11] The record reveals that the following exchange occurred during the cross-examination of Yamobi:

Q. . . . Your testimony was that [L.Y.] appeared at your door on September 28th, 2018, is that correct?

A. Correct.

Q. And so, your testimony is you had not seen her at all previous to that date after the . . . protective order was put in place?

A. Could you please repeat the last question?

Q. So, you're saying that you had not seen her or had any contact with her prior to this date after the protective order?

A. Yes, that is correct.

Transcript Volume II at 20-21. To the extent Yamobi cites Ind. Evidence Rules 901 and 902 on appeal,[1] we note that he did not cite these rules before the trial court and specifically stated, "No objection, Judge," when the prosecutor introduced State's Exhibit 1, which contains the no contact order dated November 1, 2017, and includes four pages, two of which are labeled page 3 of 3. *Id.* at 9. The first page 3 is dated November 1, 2017, and is signed by Judge Edens, and the second page 3 contains the same text as the first page 3, is file-stamped January 12, 2018, and contains a Clerk of Courts seal for Boone County and a signature above the phrase "Signature of Defendant" and under the following statement: "I have read the above Order and I understand it."

---

[1] Ind. Evidence Rule 901 is titled "Authenticating or Identifying Evidence" and provides in part: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ind. Evidence Rule 902 is titled "Evidence that is Self-Authenticating" and lists items of evidence that are self-authenticating.

State's Exhibit 1.  We also note that Ind. Evidence Rule 201 provides that "[t]he court may judicially notice . . . the existence of records of a court of this state" and that the chronological case summary for Cause No. 2155 contains an entry dated January 12, 2018, which provides:

> POR - Service Perfected: Service Date: 1/12/2018 8:45 AM
> Person Served: Abdul Aziz Yamobi; Served By: AJ Naekel;
> Street: 307 Courthouse Square; City: Lebanon; County: Boone;
> Agency: Boone County Sheriff Department; Manner: Personal;
>
> Served: Yamobi, Abdul Aziz

Chronological Case Summary for Cause No. 2155.[2]  Further, Officer Wright testified that he "confirmed that [Yamobi] had the active protection order and it was served."  Transcript Volume II at 12.

[12]  We conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found that Yamobi knowingly violated the no contact order, and his arguments amount to an invitation to reweigh the evidence.

### *Conclusion*

[13]  For the foregoing reasons, we affirm Yamobi's conviction.

---

[2] We note that Ind. Evidence Rule 101(b) provides in part: "These rules apply in all proceedings in the courts of the State of Indiana except as otherwise required by the Constitution of the United States or Indiana, by the provisions of this rule, or by other rules promulgated by the Indiana Supreme Court."

Affirmed.

May, J., and Mathias, J., concur.